IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **CHIQUITTA SALTER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**SYNCHRONY BANK,**<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Chiquitta Salter ("Plaintiff" or "Salter") brings this Class Action Complaint and Demand for Jury Trial against Defendant Synchrony Bank, ("Defendant" or "Synchrony Bank") to stop the Defendant from violating the Telephone Consumer Protection Act by making calls without consent to consumers' cellular phone numbers using pre-recorded automated voice messages. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Chiquitta Salter is a resident of West Palm Beach, Florida.

2. Defendant Synchrony Bank is, and at all times mentioned herein was, a National Banking Association chartered as a Federal Savings Bank with headquarters at 170 Election Road, Draper, Utah 84020. Defendant Synchrony Bank conducts business throughout this District, Florida, and the U.S.

**JURISDICTION AND VENUE**

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and made pre-recorded calls into this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

2

11. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2022 alone, at a rate of 134.3 million calls per day. www.robocallindex.com (last visited March 6, 2022).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. Defendant Synchrony Bank is a subsidiary of Synchrony Financial, a consumer financial services company. Through Synchrony Bank, Synchrony Financial offers, directly to retail and commercial customers, a range of deposit products insured by the Federal Deposit Insurance Corporation ("FDIC").

16. Defendant Synchrony Bank makes unsolicited calls using pre-recorded automated voice messages to consumers for debt collection. Defendant places such calls to some consumers

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

from whom it has never obtained prior express written to place such calls, like in the case of Plaintiff Salter.

17. Multiple consumers have posted complaint regarding calls they received from and/or on behalf of Defendant Synchrony Bank, similar to those received by Plaintiff Salter, including complaints of receiving unsolicited pre-recorded calls from 972-512-3474, the same phone number from which the Plaintiff Salter was called, and 866-419-2780 the call back number Defendant's pre-recorded voice messages provided to Plaintiff Salter, for instance:

- "This is a bank named Syncrony. They use some kind of auto-dialer and if they get your voicemail, they won't bother to leave you any kind of useful message."[3]

- "Our office just got a call from this number. Caller ID says "Carrollton". A recorded call from Synchrony. Left this number as a call back number. Never mentioned a name or what this is regarding. Will be labeled as a scam call and never answered."[4]

- "call day and night robo calls"[5]

- "Phone shows Account Services when they call. Which they do multiple times a day. I've answered on occasion and no one answers. Have called back and it just rings and rings."[6]

- "I dont know this number and after searching it is from a bank I have never dealt with. They call 5 or 6 times a day."[7]

- "Annoying robocall"[8]

- "synchrony home finance collections"[9]

- "extreme harassment calls. 10 to 20 times a day."[10]

- "rapidfire robocalling"[11]

---

[3] https://800notes.com/Phone.aspx/1-866-419-2780/9
[4] *Id.*
[5] https://www.shouldianswer.com/phone-number/8664192780
[6] *Id.*
[7] https://www.shouldianswer.com/phone-number/9725123474
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

4

18. Multiple consumers have also posted complaints regarding calls using pre-recorded automated voice message they received from Defendant Synchrony Bank, including calls using the identical voice messages received by Plaintiff Salter:



[12]

19. In response to these calls, Plaintiff Salter brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF SALTER'S ALLEGATIONS

20. Plaintiff Salter is the sole subscriber and user of the cell phone number ending xxx-xxx-9082.

---

[12] https://directory.youmail.com/directory/phone/8664192780

5

21. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

22. In September 2021, Plaintiff Salter started receiving calls from Defendant Synchrony Bank on her cell phone. Plaintiff answered some of these calls, which were addressed to someone named David. The calls were regarding a debt collection. Plaintiff informed the Defendant's employees on multiple occasions that they had the wrong number and requested them to stop calling her cell phone.

23. Despite the stop requests, Plaintiff Salter continues to receive calls from the Defendant Synchrony Bank, including calls using pre-recorded automated voice message.

24. On March 2, 2022, at 2:37 PM, Plaintiff Salter received another call from Defendant Synchrony Bank on her cell phone using the phone number 972-512-3474, resulting in a pre-recorded automated voice message, which stated:

> "This is a message from Synchrony Bank. Please return our call to 1-866-419-2780. Our mailing address is 170 West Election Road, Suite 125, Draper, UT 84020. Again, please call 1-866-419-2780. This is a recording. Thank you."



25. On March 3, 2022, at 6:08 PM, Plaintiff Salter received another call from Defendant Synchrony Bank on her cell phone using the same phone number 972-512-3474, resulting in the exact same pre-recorded automated voice message as the previous call.



26. On March 4, 2022, at 1:23 PM, Plaintiff Salter received yet another call from Defendant Synchrony Bank on her cell phone using the same phone number 972-512-3474 resulting in the exact same pre-recorded automated voice message as the previous calls.



27. Plaintiff Salter does not have an account with Synchrony Bank.

28. Plaintiff Salter has never been a Synchrony Bank customer.

29. Plaintiff Salter did not consent to receive calls from Synchrony Bank and never consented to receive calls intended for other Synchrony Bank customers.

30. The unauthorized pre-recorded telephone calls that Plaintiff received from and/or on behalf of the Defendant have harmed Plaintiff Salter in the form of annoyance, nuisance, and invasion of privacy, occupation of her phone line and disturbance of the use and enjoyment of her phone, wear and tear on the phone's hardware (including the phone's battery), and consumption of memory on the phone.

31. Seeking redress for these injuries, Plaintiff Salter, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

32. Plaintiff Salter brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) the Defendant (or an agent on Defendant's behalf) called on their cellular telephone number (2) using the same or a similar pre-recorded voice message as was used to call the Plaintiff (3) after Defendant was notified that the number was a wrong number.

33. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Salter anticipates the need to amend the Class definition following appropriate discovery.

34. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA; and

(b) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Class.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class,

not on facts or law applicable only to Plaintiff Salter. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Salter and the Pre-recorded No Consent Class)**

38. Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

39. Defendant transmitted unwanted telephone calls to Plaintiff Salter and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

40. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Salter and the other members of the Pre-recorded No Consent Class.

41. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Salter and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Salter requests a jury trial.

**CHIQUITTA SALTER**, individually and on behalf of all others similarly situated,

DATED this 9th day of March, 2022.

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*